UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA       :
      :
    -v-         :     CR 07-00730 (CM)
      :
RUOPIAN CHEN,       :
      :
      Defendant.     :
-------------------------------------------------------------x

## SENTENCING MEMORANDUM OF RUOPIAN (RUBIN) CHEN

SPEARS & IMES LLP
David Spears
Christopher W. Dysard
51 Madison Avenue
New York, New York  10010
Tel:  (212) 213-6996
Fax:  (212) 213-0849

*Attorneys for Defendant Ruopian (Rubin) Chen*

Dated:  November 28, 2007

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION .............................................................................................................1

I.     MR. CHEN'S PERSONAL AND FAMILY CIRCUMSTANCES ...................................1

     A.     Childhood and Adolescence ...........................................................................1

     B.     University and Graduate Studies .....................................................................3

     C.     Employment....................................................................................................4

     D.     Family ............................................................................................................5

     E.     Awaiting Sentencing.......................................................................................5

II.     PLEA AGREEMENT......................................................................................................6

III.     CIVIL ACTION BROUGHT BY SEC ..........................................................................7

IV.     PRESENTENCE INVESTIGATION REPORT ............................................................7

V.     RELEVANT CONSIDERATIONS IN SENTENCING .................................................7

     A.     The Court Should Impose a Term of Imprisonment of 30 Months.........................7

          1.     The "Nature and Circumstances of the Offense
               and the History and Characteristics of the
               Defendant" Indicate That Leniency Is Appropriate ....................................8

          2.     The Remaining § 3553(a) Factors Also
               Indicate That Leniency Is Appropriate.......................................................11

     B     To the Extent a Fine Is Deemed Appropriate, the Court Should
          Impose a Fine at or Below the Bottom of the Guidelines Range ..........................13

CONCLUSION ...............................................................................................................14

INDEX OF EXHIBITS .....................................................................................................I

## TABLE OF AUTHORITIES

### Cases

*United States v. Adelson*,
    441 F. Supp. 2d 506 (S.D.N.Y. 2006) .................................................................9, 10, 12

*United States v. Booker*,
    543 U.S. 220, 125 S. Ct. 738 (2005) ................................................................................7, 9

*United States v. Castillo*,
    No. 03 CR 835 (RWS), 2007 WL 582749 (S.D.N.Y. Feb. 26, 2007) ...............................12

*United States v. Crosby*,
    397 F.3d 103 (2d Cir. 2005) ............................................................................................7

*United States v. Fearon-Hales*,
    224 Fed. Appx. 109 (2d Cir.), *cert. denied*, 128 S. Ct. 328 (2007) ....................................9

*United States v. Gaind*,
    829 F. Supp. 669 (S.D.N.Y. 1993) ...................................................................................12

*United States v. Gamez*,
    1 F. Supp. 2d 176 (E.D.N.Y. 1998) .................................................................................11

*United States v. Hawkins*,
    380 F. Supp. 2d 143 (E.D.N.Y. 2005), *aff'd*, 228 Fed. Appx. 107 (2d Cir. 2007)............10

*United States v. Jagmohan*,
    909 F.2d 61 (2d Cir. 1990) ..............................................................................................10

*United States v. Jones*,
    460 F.3d 191 (2d Cir. 2006) ............................................................................................13

*United States v. Najjar*,
    No. 96-1478, 1997 WL 87231 (2d Cir. Mar. 3, 1997) .....................................................13

*United States v. White*,
    301 F. Supp. 2d 289 (S.D.N.Y. 2004) ...............................................................................9

## Statutes

15 U.S.C. § 78u-1(a) .................................................................................................. 13

18 U.S.C. § 3553(a) ................................................................................ 6, 7, 8, 11, 12, 13

## Federal Sentencing Guidelines

U.S.S.G. § 1B1.4 ........................................................................................................... 9

U.S.S.G. § 5H1.6 ......................................................................................................... 13

U.S.S.G. § 5K2.0 ......................................................................................................... 13

## Miscellaneous

Richard Frase, *Punishment Purposes*,
    58 Stanford L. Rev. 67 (2005) ............................................................................. 12

## INTRODUCTION

By and through his attorneys of record, Ruopian (Rubin) Chen hereby submits this sentencing memorandum. Mr. Chen respectfully requests that the Court impose a term of imprisonment of 30 months and, to the extent a fine is deemed appropriate, a fine at or below the bottom of the Sentencing Guidelines range.

## I.    MR. CHEN'S PERSONAL AND FAMILY CIRCUMSTANCES

In sentencing Mr. Chen, the Court should weigh who he is as a person, not merely the facts of his offense. Although Mr. Chen made terrible mistakes – for which he takes full responsibility and feels great remorse, as he relates in his letter to the Court (attached hereto as Exhibit ("Ex.") 1) – he has otherwise lived an exemplary life. Born into the turmoil of the Chinese Cultural Revolution, Mr. Chen overcame conditions sometimes approaching poverty and worked diligently to realize his and his family's dream: to make a life for himself in America. He was an accomplished student, and he earned the respect of his colleagues in the financial industry. He has no criminal history: he has never before been arrested or charged with any crimes. He is a loving father, husband, son, and friend, whose generosity and charity have touched the lives of many around him, often in profound ways.

### A.    Childhood and Adolescence

Ruopian Chen was born in 1973 in Liao Ning, China. In 1973, China was still in the throes of the Cultural Revolution, a mass reform movement launched by Chairman Mao Zedong in 1966 in an attempt to "purify" Chinese Communism and to re-establish Mao's ideological pre-eminence. This period was marked by political zealotry, great economic instability, and spasms of widespread, vicious violence; hundreds of thousands of people died. Universities were closed, libraries were burned down, churches and museums were ransacked, and millions were sent to the countryside to be "reeducated" by working alongside peasants.

Because he had graduated from Peking (Beijing) University, Mr. Chen's father was terrorized by "revolutionaries" intent on purging society of intellectuals. He and his family were banished to Liao Ning, a northeastern province of China, where the family endured great hardship. As Mr. Chen's father recounts in a letter to the Court, the beginning of young Ruopian's life was very difficult: food was sometimes scarce, and heating was often inadequate in the harsh Liao Ning winters. (Ex. 2 at 1.)

Nevertheless, Ruopian prospered. He earned the highest honors at every level of schooling in China, and even as a child he displayed many of the distinctive traits for which he is known today: charity to others, loyalty, hard work, and a positive attitude even in the face of adversity. In his letter to the Court, Mr. Chen's father explains how Ruopian was "raised as a caring and helpful person" and how he "always saved his favorite things or food [for] the village kids who had probably more difficult lives than ours." (*Id.*) He remembers how Ruopian kept his wits when his sister was injured after a terrifying fall, and how his prompt and decisive action enabled her to recover fully. (*Id.* at 2.) And he recalls how Ruopian, bruised and battered from a fall of his own, insisted on taking a final exam before checking in to a hospital; he scored the best grade in the class. (*Id.* at 1.)

The poignant letter to the Court from Yang Gao (Ex. 3), one of Mr. Chen's classmates in middle school, also illustrates young Ruopian's kindness and empathy. Mr. Gao recalls that Ruopian was "one of the top students at school" and "was well liked and a favorite of teachers and parents." (*Id.* at 2.) Mr. Gao, in contrast, felt alienated and full of despair; in his words, he and Ruopian "were driving on different lanes in our life." (*Id.*) Nevertheless, Ruopian approached Mr. Gao one day and immediately befriended him. (*Id.*) Ruopian encouraged his new friend Mr. Gao to pursue his passion for painting, even using his modest allowance to buy

- 2 -

Mr. Gao his first set of paint brushes. (*Id.*) Mr. Chen also tutored Mr. Gao in numerous classes,

helping him get better grades. (*Id.*) Mr. Gao is now a professional painter with a small art

gallery in China, and he states unequivocally: "Without Ruopian, my life [would] never be like

this. He was the one who helped redefin[e] me, and I owe him a lifetime [of] thanks." (*Id.* at 3.)

**B.** **University and Graduate Studies**

In high school, Mr. Chen was rated as the "Triple Excellency" student every year, the

highest possible honor. (Ex. 2 at 2.) Upon graduation in 1992, he was granted an exemption

from the university admission exams (an honor bestowed on only the top 1% of the students in

all of China). (*Id.*) Mr. Chen followed in his father's footsteps and enrolled at Beijing

University, the most prestigious university in China. (*Id.*) He continued his exemplary record in

college, winning fellowships each year and earning outstanding grades. (*Id.*) He also served as

president of his class all four years. (Ex. 4 at 1.)

Helen Shi, a college classmate, recalls Mr. Chen's willingness to help others. (*Id.*) In her

letter to the Court, she sounds a theme that is repeated by people who have known Mr. Chen at

different stages of his life: "Ruopian has such a positive attitude toward life, even when under

tremendous pressure, or facing hardships. This optimism radiates from him, and influenced

many people around him[.]" (*Id.*) Ms. Shi writes that Mr. Chen "encouraged me to pursue a

better life" and "I would not be where I am now without him." (*Id.* at 2.)

Mr. Chen's commitment and discipline in college paid off: upon graduation in 1996, he

was rewarded with a scholarship to study in the elite graduate Chemistry program at Princeton

University. Having the opportunity to attend school in the United States was a dream come true

for Mr. Chen and his family. Mr. Chen entered the United States on a student visa in August

1996. At Princeton, Mr. Chen again excelled in his studies, and in 2001, he was awarded a Ph.D.

in Chemistry.

- 3 -

Dr. Joanna Wu, a fellow researcher at Princeton, fondly recalls Mr. Chen's good works and selflessness. Dr. Wu tells of how Mr. Chen volunteered for difficult laboratory work that no one else wanted to do, but from which everyone benefited. (Ex. 5 at 1.) She remembers how Mr. Chen and Ms. Wang donated money to a needy family, even though they themselves barely had enough to get by. (*Id.* at 2.) And she recalls that, when she was suffering from acute depression, Mr. Chen and Ms. Wang supported her: "Without Rubin and Jennifer's help, I cannot imagine how to survive that darkest period of my life." (*Id.*)

## C.    Employment

In addition to his specialized undergraduate and graduate studies, Mr. Chen had long had an interest in business. Armed with years of training in high-level mathematics, Mr. Chen was especially drawn to quantitative finance opportunities on Wall Street. In July 2001, he was hired by J.P. Morgan Chase in New York as an analyst in the risk management division; eventually he moved into hedge fund investments.

In July 2005, Mr. Chen joined ING Investment Management, working in the "fund of funds" group. In that position, he oversaw the firm's alternative investments in hedge funds. He flourished in this role and, by all accounts, his work was first-rate. Chris Solarz, who reported directly to Mr. Chen at ING, writes that Mr. Chen is "a trustworthy friend, a loyal husband, and a generous person," with "vast knowledge and experience" and "a reputation of being diligent, responsive and focused among clients." (Ex. 6 at 1-2.) Mr. Chen's "unique combination of intellect and personality" directly impacted Mr. Solarz's work experience: "[Mr. Chen's] positive attitude was contagious around the office and I often found myself in a good mood after just speaking briefly with him. Above all, he was a mentor to me, and it was under his guidance that I found myself enjoying my job for the first time in six years of working on Wall Street." (*Id.* at 2.)

- 4 -

**D.    Family**

While academics and his career have always been important to Mr. Chen, family is the cornerstone of his life.  His parents have been steadfast sources of moral guidance and support, and, as his father explains in his letter to the Court (Ex. 2), Mr. Chen has remained very close to his parents and sister in China, despite the extreme distance that separates him from them.

The bond between Mr. Chen and his wife is especially close.  While at Princeton, Mr. Chen began dating Ms. Wang, who was then a graduate student at the University of Minnesota. They married in 1999.  Neither has any relatives in the United States, so they have always looked to each other for advice, comfort, and encouragement – even more than the typical husband and wife.  Mr. Chen's deep fondness for his wife is evident to anyone who has spent any time with him.  Chris Solarz, who reported to Mr. Chen at ING, recalls that Mr. Chen "spoke so highly and often of Jennifer that I felt I knew her before I even met her," that he was a "family man," and that he "made the most of his time by conducting many of his client meetings over lunch so he could see his wife after work."  (Ex. 6 at 1-2.)

Mr. Chen's and Ms. Wang's only child, J.C.,[1] was born in New York in June 2007. Without question, the most tragic aspect of Mr. Chen's impending incarceration is not his own loss of freedom, but the harm to J.C. as a result of separation from his father.  Given the uncertainty about who will care for and provide financial support to J.C. while Mr. Chen is incarcerated, Mr. Chen is filled with anxiety about his son's welfare.

**E.    Awaiting Sentencing**

The period following Mr. Chen's arrest has been the most difficult in his life; in his father's words, the last several months have "burnt him inside out."  (Ex. 2 at 3.)  His family has

---

[1] Pursuant to this District's ECF Privacy Policy, only the initials of Mr. Chen's minor child are used in this submission.

- 5 -

suffered greatly. On the advice of counsel, Mr. Chen resigned his position at ING in March 2007. By resigning, Mr. Chen surrendered a significant bonus he had earned in the prior year, and was to be paid in one week, and lost all benefits. He has not been employed since, and the resulting financial strain on Mr. Chen and his family has been severe. Furthermore, as a condition of his release on bond in May 2007, Mr. Chen has been on home confinement under electronic monitoring at his own cost for almost seven months, through the final phase of his wife's high-risk pregnancy and the first months of his son's life.

Yet Mr. Chen continues to be an important source of strength and comfort for those around him. He is an anchor for his family, having dedicated himself to the care of his son and his wife, who is struggling with severe depression. His primary concern is the welfare of his son and his wife, and he is committed to keeping his family intact during this very challenging time.

## II.    PLEA AGREEMENT

On August 2, 2007, Mr. Chen entered into a plea agreement with the government. Pursuant to the agreement, Mr. Chen pled guilty to Counts One through Four of the Information, admitting the charges of conspiracy and insider trading in connection with the purchase and sale of securities of Town and Country Trust ("Town and Country"), Glenborough Realty Trust ("Glenborough"), and Genesis HealthCare Corporation ("Genesis"). The government and Mr. Chen have stipulated to a Sentencing Guidelines[2] range of 30-37 months of imprisonment and agree that a sentence within this range would constitute a reasonable sentence in light of all the factors set forth in 18 U.S.C. § 3553(a).

---

[2] All references herein to the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are to the version effective November 1, 2007.

### III.    CIVIL ACTION BROUGHT BY SEC

The U.S. Securities and Exchange Commission ("SEC") brought a civil action against Mr. Chen and Ms. Wang on May 10, 2007, based on trading in the securities of Town and Country, Glenborough, and Genesis.  A preliminary injunction entered in that matter establishes a restrictive budget for Mr. Chen and Ms. Wang and requires them to report certain expenditures and to provide financial statements on a monthly basis to the SEC.  Since the preliminary injunction was entered, there has been no activity in that case.  Although Mr. Chen has devoted considerable time in an effort to settle the SEC action, to date no agreement has been reached. Mr. Chen still hopes to settle with the SEC.

### IV.    PRESENTENCE INVESTIGATION REPORT

The Presentence Investigation Report ("PSR") prepared by the Probation Office, dated November 27, 2007, reflects the same Guidelines calculation as is stipulated in the plea agreement.  (PSR ¶¶ 57-69, 102-03.)  The Probation Office has recommended a sentence of imprisonment of 30 months, at the lowest end of the Guidelines range, and a fine of $10,000. (*Id.* at 28-30.)

### V.    RELEVANT CONSIDERATIONS IN SENTENCING

A.    The Court Should Impose a Term of Imprisonment of 30 Months

We respectfully request that the Court impose a term of imprisonment of 30 months.  In determining the appropriate sentence, in accordance with *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Court must consider the factors identified in 18 U.S.C. § 3553(a).  Each of the relevant § 3553(a) factors militates in favor of leniency.

1.   The "Nature and Circumstances of the Offense and the History and
     Characteristics of the Defendant" Indicate That Leniency Is Appropriate

The "nature and circumstances of the offense and the history and characteristics of the

defendant," 18 U.S.C. § 3553(a)(1), indicate that a sentence at the bottom of the Guidelines

range is appropriate. There is no question that Mr. Chen's offense was serious, but his "history

and characteristics" merit careful consideration by the Court.

One critical consideration is the fact that Mr. Chen has been under house arrest since May

10, even though at the time his wife was in the ninth month of her pregnancy, his passports had

been seized, and his bond was secured by his New Jersey home, $100,000 in cash, and two

financially responsible co-signers. By the time of sentencing, Mr. Chen will have been confined

to his home for almost seven months. During this period, he has not been able to leave his home

without prior authorization from Pretrial Services, other than to make adequately documented

attorney and medical visits. He has not been able to assist his wife with trips to the doctor after

his son's birth, take his son to the park, or go to church; in fact, over the past several months, he

has rarely left his house. The Court should not ignore the fact of Mr. Chen's complete loss of

liberty when determining the appropriate sentence. Subtracting the seven months Mr. Chen

served under house arrest from 37 months (the upper limit of the Guidelines range) results in a

term of 30 months.

A second important factor is Mr. Chen's family ties and responsibilities. Mr. Chen plays

a central role in his newborn son's upbringing and emotional and financial support. Mr. Chen

stands ready to serve a prison term for his offense, and he understands that, as a consequence, he

will likely miss J.C.'s first steps and first words. But a sentence of 30 months will mean that Mr.

Chen can be reunited with his son soon after J.C.'s third birthday and begin to earn an income

again to provide for his family.

- 8 -

Even under the former mandatory Guidelines regime, family ties and responsibilities were a relevant consideration by the sentencing court when, as here, the court sought to determine where a sentence should fall *within the Guidelines range. See, e.g., United States v. White*, 301 F. Supp. 2d 289, 294 (S.D.N.Y. 2004) ("A defendant's family circumstances are part of [his] history and characteristics and hence are relevant to the Court's decision where to sentence [him] *within* the applicable Guidelines range.") (emphasis in original); *see also* U.S.S.G. § 1B1.4 (in determining the sentence to impose within the Guidelines range, "the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law") (emphasis added). Furthermore, after *Booker*, which rendered the Guidelines advisory, it is clear that the Court may take account of Mr. Chen's family circumstances in determining his sentence. *See, e.g., United States v. Fearon-Hales*, 224 Fed. Appx. 109, 113 (2d Cir.), *cert. denied*, 128 S. Ct. 328 (2007). Consideration of the welfare of J.C., an innocent third party and the victim of circumstances not of his making, points to a sentence at the lowest end of the stipulated Guidelines range.

Third, Mr. Chen's compelling personal background warrants consideration. *See generally United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006) ("[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance."). With perseverance and hard work, Mr. Chen overcame difficult circumstances in China to become a stellar student and to earn, at the age of just 28, a Ph.D. from Princeton, one of the premier institutions in the world. His employment record was similarly outstanding. Mr. Chen has no prior criminal involvement and no record of drug or alcohol abuse. Just as important, as is evident from the personal anecdotes of friends and family

- 9 -

in the letters submitted with this memorandum, Mr. Chen has always been a caring and generous friend and colleague. He has consistently taken the time to help others in need, and he has inspired those around him to become better and more fulfilled people. Mr. Chen is also a loving and devoted husband, son, and father. These facts indicate that a sentence at the lowest end of the stipulated range is appropriate. *Cf. United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir. 1990) (affirming downward departure based on, among other things, the defendant's employment history); *Adelson*, 441 F. Supp. 2d at 513-15 (imposing non-Guidelines sentence where, among other things, defendant's "past history was exemplary," citing examples of his "good works and deep humanity").

Finally, the Court should also consider Mr. Chen's conduct in the lead-up to sentencing. In the period following his arrest, Mr. Chen has complied fully with the demanding terms of his release (PSR at 31), as well as the strict reporting requirements set out in the preliminary injunction in the SEC civil case. At all times he and Ms. Wang have cooperated with the SEC's parallel investigation, volunteering very early on (well before the SEC brought a civil case) to take measures to freeze the brokerage account that holds the proceeds at issue to ensure that the funds were preserved. From the outset of the investigation, they also directed Ms. Wang's mother not to make any withdrawals from that account. Mr. Chen has not committed additional offenses; indeed, he has ceased trading securities altogether. And, just two months after J.C. was born, Mr. Chen entered into a plea agreement with the government.

Mr. Chen's post-arrest conduct warrants consideration by the Court, and also counsels in favor of a sentence of 30 months. *Cf. United States v. Hawkins*, 380 F. Supp. 2d 143, 160 (E.D.N.Y. 2005) (granting downward departure or non-Guidelines sentence based on defendant's rehabilitation prior to sentencing; describing defendant as "[a] person without a serious criminal

- 10 -

history who has made a remarkable shift back to the person she was before criminality, or even beyond"), *aff'd*, 228 Fed. Appx. 107 (2d Cir. 2007); *United States v. Gamez*, 1 F. Supp. 2d 176, 185 (E.D.N.Y. 1998) (granting downward departure based on, among other things, the defendant's rehabilitation; noting that "[c]oming under the watchful eye of the criminal justice system has turned defendants away from the path of illegality, likely forever").

2.    The Remaining § 3553(a) Factors Also
Indicate That Leniency Is Appropriate

The remaining relevant factors under § 3553(a) point to the same conclusion. As the Probation Office has noted (PSR ¶ 103), a sentence of 30 months is within the range prescribed by the Guidelines. *See* 18 U.S.C. § 3553(a)(4) (Court shall consider the sentencing range established by the Guidelines); *id.* § 3553(a)(5) (Court shall consider policy statements of the Sentencing Commission). As such, the sentence would serve the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* § 3553(a)(2)(A).

Moreover, a sentence of 30 months would undoubtedly "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), and "protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). Mr. Chen has no prior arrests or convictions (PSR ¶¶ 70-72), and his ordeal since arrest, alone, ensures that he will never again engage in criminal conduct. It also serves as a cautionary tale for others tempted to engage in insider trading. As a direct result of his conduct, Mr. Chen's savings have been depleted, he has lost literally millions of dollars in present and future wages, his photograph and the details of his offense have been splashed across the pages of major international newspapers and permanently embedded in the Internet, he has been confined to his home since arrest, he may be barred from working in the financial industry, and he is now branded as a confessed felon.

- 11 -

Under these circumstances, even a relatively short term of imprisonment would serve as an adequate general and specific deterrent and protect the public. *See, e.g., United States v. Castillo*, No. 03 CR 835 (RWS), 2007 WL 582749, at *7 (S.D.N.Y. Feb. 26, 2007) (ruling that a below-Guidelines sentence "would still have a sufficient deterrent effect in this case" in light of "this particular defendant and his lack of any previous incarceration"); *Adelson*, 441 F. Supp. 2d at 514 ("[T]here is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders."); Richard Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67, 80 (2005) ("White-collar and regulatory offenders are more likely to be deterred, even by selective enforcement and modest penalties; such offenders have many lawful alternatives and much to lose from being convicted, regardless of the penalty.").

In addition, the ability of Mr. Chen and Ms. Wang to engage in similar crimes has been effectively eliminated. Both have resigned from their jobs and face professional bars in connection with the SEC civil action. Consequently, neither has, or will have, any access to inside information. *Cf. United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where objective of deterrence was served by the pre-sentence destruction of the defendant's business upon discovery of the crime, which "decreased for the foreseeable future his ability to commit further crime of the type he was tempted to undertake").

Finally, an extended prison term would not serve Mr. Chen's educational, vocational, medical, or other correctional treatment needs. *See* 18 U.S.C. § 3553(a)(2)(D). Given his advanced educational background and high level of expertise, any training he requires will not be available in federal prison.

*       *       *

Based on each of the considerations described above, alone or in combination, *cf. United States v. Najjar*, No. 96-1478, 1997 WL 87231, at *2 (2d Cir. Mar. 3, 1997) (noting that "[i]n 'extraordinary cases' a sentencing judge may depart downward based on a combination of factors that might not warrant a departure when considered individually"); U.S.S.G. § 5K2.0(c), we respectfully request that the Court impose a term of imprisonment of 30 months. A longer sentence would not be consistent with § 3553's directive that the sentence imposed be "sufficient, but not greater than necessary" to fulfill the statutory objectives of sentencing, 18 U.S.C. § 3553(a), nor would it be "a fair and just sentence under all the circumstances," *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

B.    To the Extent a Fine Is Deemed Appropriate, the Court Should
      Impose a Fine at or Below the Bottom of the Guidelines Range

The range of fines prescribed by the Guidelines is $6,000 to $5,000,000. (PSR ¶ 111.) The Probation Office has recommended that Mr. Chen be fined $10,000. (*Id.* at 30.) We ask that the fine imposed by the Court, if any, be at or below the bottom of the Guidelines range. Neither Mr. Chen nor Ms. Wang is currently employed, and their employment prospects for the immediate future are bleak. They must provide for their son's care and upbringing out of their rapidly diminishing savings. *See* U.S.S.G. § 5H1.6 (Guidelines expressly recognize that "[f]amily responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine").

Furthermore, in connection with the civil matter with the SEC, Mr. Chen and Ms. Wang face disgorgement of profits and penalties that far exceed their net worth. *See* 15 U.S.C. § 78u-1(a)(2) (authorizing civil penalties up to "three times the profit gained or loss avoided"). Specifically, the standard typically employed by the SEC in settling insider trading cases is disgorgement of all profits, plus a "one-time" penalty equal to the amount of profits. Indeed, in

- 13 -

cases such as this one, the SEC generally requires a one-time penalty from each defendant. Even a single one-time penalty would far exceed the net worth of Mr. Chen and his wife. As noted above, Mr. Chen and Ms. Wang are working to settle the matter with the SEC, but the outcome in that case remains uncertain. Under these extenuating circumstances, a severe fine would utterly ruin Mr. Chen and his family.

## CONCLUSION

For the reasons set forth above, Mr. Chen respectfully requests that the Court impose a term of imprisonment of 30 months. Additionally, to the extent a fine is deemed appropriate, Mr. Chen asks the Court to impose a fine at or below the bottom of the Guidelines range.

Dated: New York, New York
     November 28, 2007

                    Respectfully submitted,

                    SPEARS & IMES LLP

By:   s/ David Spears

                    David Spears
                    Christopher W. Dysard
                    51 Madison Avenue
                    New York, New York  10010
                    Tel:  (212) 213-6996
                    Fax:  (212) 213-0849

                    *Attorneys for Defendant Ruopian (Rubin) Chen*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 28th day of November 2007, I electronically filed a copy of the foregoing Sentencing Memorandum of Ruopian (Rubin) Chen with the Clerk of the Court using the Court's CM/ECF system, which will send notice of such filing to all parties.

                s/ Jacob Moss